## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 04-20203-Cr-Middlebrooks/Johnson

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

HARVEY MARTIN HOLLOWAY, JR.,

        Defendant.

_____/

FILED by _____ D.C.

**JUL 0 3 2008**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## ORDER

THIS CAUSE is before the Court for a preliminary hearing on Defendant's alleged violations of supervised release and for a detention hearing. The Defendant was initially convicted of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). The Defendant was sentenced to 27 months imprisonment followed by 3 years of supervised release. The Defendant is now charged with violating his supervised release by: (1) failing to refrain from violating the law, by committing the offense of kidnaping of a child under the age of 13, in violation of Florida Statute 787.01, and grand theft auto, in violation of Florida Statute 812.014; and (2) failing to refrain from violating the law, by committing the offense of domestic battery, in violation of Florida Statute 784.03.

On June 19, 2008, a preliminary hearing, and, detention hearing was held. The Defendant was represented by Kevin Anderson. The Government was represented by Assistant United States Attorney Kimberly Abel. The Defendant denies each alleged violation charged in the Petition. At the conclusion of the hearing the Court asked the parties to submit written briefs addressing whether false imprisonment is a lesser included

offense of kidnaping. Defendant submitted his supplemental memorandum of law on June 23, 2008 (DE 763). The Government submitted its brief the same day (DE 764). This matter is now ripe for review.

## PRELIMINARY HEARING

The issue before the Court is whether pursuant to Federal Rule of Criminal Procedure 32.1 there is probable cause to believe that Defendant violated a condition of his supervised release. It is uncontested by Defendant: (1) that his supervised release (DE 475) includes a condition that "Defendant shall not commit another federal, state or local crime;" and (2) that he was arrested and charged by the State of Florida with false imprisonment, grand theft (auto) and domestic battery. The State charges arose from an incident which occurred on January 31, 2008 (DE 745). The parties do not dispute that the charges were *nolle prossed* in their entirety by the State on June 18, 2008. (Defendant's Exhibit 3).

At the June 23, 2008 hearing, the Government presented the Reporting Officer Narrative (Government's Exhibit 1) which is a police report that describes the events and circumstances underlying the violations of law which Defendant is purported to have committed, and, the testimony of United States Probation Officer Judith Guthrie. Defendant presented three witnesses, his wife Trinette Gaskins Holloway ("Gaskins"), his friend Weatherington Hobbs ("Hobbs"), and his brother-in-law Kenneth Edwards.

The Reporting Officer Narrative (Government's Exhibit 1) states the following:

On January 31, 2008, shortly after 7:00 a.m., the police responded to a report of "a stolen vehicle" which had been taken with "a 4-year old child in the vehicle." At the scene, police learned that Defendant's wife (Gaskins) had approached a gentleman named Hobbs

2

and asked if she could use his "cell phone to call the police."[1] Hobbs, a maintenance worker, was collecting trash in the area. Hobbs heard a man and woman arguing. He gave Gaskins his phone. The Defendant quickly appeared and approached Hobbs truck. "Hobbs had left the keys in the ignition." The Defendant first approached the passenger side door of the truck. Hobbs said "Get away from my truck - what are your doing?" Defendant said "I can't be dealin [sic] with the police - I gotta go." Defendant then got into the driver side of the vehicle. As he did so, Hobbs told him several times "my baby girl is in there - you can't take that." Defendant replied, "I gotta go." Defendant drove away with the little girl in the truck.

A short time later, Defendant called his wife on her cell phone. After speaking with his wife, Defendant asked to speak with Hobbs. Hobbs was unable to ascertain Defendant's location. Hobbs repeatedly asked Defendant to "bring his baby back." Defendant makes a second phone call to his wife's cell phone. The phone is given to the police hostage negotiator.[2] The Defendant calls again and speaks with the police hostage negotiator. Defendant advises the hostage negotiator that "he was on his way back to the scene with the vehicle and the child." The report states that the child and the vehicle were not returned by Defendant. Instead, they were returned by Kenneth Edwards. The report states that Hobbs and Gaskins executed written statements. The report further states that Hobbs and Gaskin wished to press charges against the Defendant. Additionally, Hobbs completed and signed a stolen vehicle affidavit.

---

[1] The Reporting Officer Narrative states that a supplemental report was filed by Officer Christoffers concerning domestic violence victim Trinette Gaskins Holloway. The Court was not provided with this supplemental report.

[2] The report states that a supplemental report by the hostage negotiator includes information as to how the Defendant responded during this interview. The Government has not provided the supplemental report for the Court's consideration.

3

## United States Probation Officer Judy Guthrie

Guthrie testified that Defendant commenced supervised release on July 7, 2006.[3] In December 2006, the Defendant was arrested for domestic assault. The court was notified of the offense. The domestic assault involved Defendant's girl friend Trinette Gaskins - now his wife. Guthrie testified that according to a complaint filed by Gaskins, the domestic assault involved the Defendant suddenly jumping in front of her car wearing a mask. Gaskins later recanted her story and the criminal charges were dropped. A Probation Officer offered to help Gaskins enter a shelter for victims of domestic violence. Gaskins refused. The Probation Office took no action on this offense. Guthrie stated that Defendant's record includes another incident of domestic violence in August 2001. Guthrie had no knowledge about the 2001 charge.

Guthrie testified to the contents of the Reporting Officer Narrative (Government's Exhibit #1) and added the following information about the domestic battery which allegedly occurred immediately before the Defendant allegedly drove off in the stolen truck with the child. Guthrie testified that Gaskin claimed the Defendant had been out drinking. An argument ensued between the couple. The Defendant slapped Gaskin and took a phone from her. Gaskin had marks on her face. The police took photographs of Gaskin's injury. Gaskin left the apartment. Outside the apartment Gaskins saw Hobbs, and, asked to use his phone to call the police. Based upon the police report the United States Probation Office filed the instant Petition for Violation of Supervised Release alleging that the Defendant violated the conditions of his release by committing the offenses of kidnaping,

---

[3] Guthrie is not Defendant's assigned Probation Officer. Guthrie's testimony was limited to the information contained in Defendant's United States Probation Office Record. Defendant's Probation Officer Joan Balis was unavailable for the preliminary hearing.

4

grand theft auto, and domestic battery on January 31, 2008.

Trinette Gaskins Holloway

Gaskin recanted her allegations concerning the January 31, 2008 domestic violence incident with the Defendant, which led to the Defendant allegedly stealing Hobbs' truck with his child inside. Gaskin testified that she was lying when she told police on January 31, 2008, that the Defendant struck her in the face. Gaskin said she lied about the incident because she was angry at the Defendant and wanted "to get him back" for staying out late and "messing around" with other woman. Gaskin admits that the couple argued and that Gaskin left the apartment. Gaskin admits asking Hobbs for his phone so that she could call the police, but, claims that she only pretended to call the police. Gaskin states that she did call the police "when the Defendant took [sic] truck and daughter in truck [sic]." Gaskin testified "now he really go to jail."

Gaskin testified that she spoke with the Defendant approximately twenty minutes after the Defendant left with the truck and child. Gaskin claims she told Defendant, "did you know little girl in truck?" Gaskin testified that when the Defendant heard there was a child in the truck he "burst out crying." Gaskin stated that shortly thereafter her brother returned the child and truck.

Gaskin also stated that she recanted her allegations of domestic abuse stemming from the incident with the Defendant in December 2006. Gaskin claims that she was angry at the Defendant for "being where he don't belong" and "messing around." Gaskin now claims she called police and reported the domestic incident because she was afraid he would report her for "running him over" with her car.

Weatherington Hobbs

Hobbs recanted his prior accusation that the Defendant had stolen his car and taken

his child. Hobbs testified that on January 31, 2008, at approximately 6:00 a.m., he arrived at an apartment complex where he was employed to perform maintenance tasks and remove trash. His young daughter was asleep on the floorboard of the backseat. The key was in the ignition of the vehicle. As Hobbs picked up trash in the community he heard an argument. Next, Hobbs saw the Defendant and his girlfriend arguing. The girlfriend was angry and Hobbs heard them fighting about a car. As the Defendant approached his truck Hobbs admitted that he repeatedly told the Defendant not to take his car, and, that his child was in the vehicle. Hobbs testified that "he did not know" if the Defendant heard him make these statements. After the Defendant was in the truck, started the ignition and was driving away, Hobbs gave the Defendant permission to take the truck. Hobbs testified that "he does not know" if the Defendant heard him say it was "okay to take the car." Hobbs admitted that he talked to "911" and said that his car was taken without his permission and that his child was in the car. Hobbs also admits that he "got hysterical" when the Defendant did not quickly return his child and the vehicle. Hobbs admits giving a statement to law enforcement. Hobbs also admits executing a stolen vehicle affidavit.

Hobbs has known the Defendant for approximately 14 years. Hobbs testified that "he did not want to get the Defendant into such serious trouble," and, that everything concerning the events of January 31, 2008 had been "blown out of proportion." Hobbs' signed affidavit recanting portions of his prior statements to law enforcement was entered into evidence as Defendant's Exhibit 1.

Kenneth Todd Edwards

Edwards testified that he knows the Defendant because he is married to his sister. On January 31, 2008, the Defendant arrived at Edwards house early in the morning. The Defendant received a phone call and then "broke down in tears." The Defendant went

6

outside to a truck and picked up a child that was in the back seat of the truck. The Defendant said to Edwards that he "wasn't going back." Edwards testified that he returned the child and the truck back to Hobbs.

## PRELIMINARY HEARING DISCUSSION

The Court finds that probable cause exists to believe that on January 31, 2008, Defendant violated the conditions of his supervised release by committing the offenses of false imprisonment, grand theft auto, and simple domestic battery.

Due process requires that a preliminary hearing be held following the arrest of an individual for violation of parole "to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." Morrissey v. Brewer, 408 U.S. 471, 485-486 (1972). The Court finds there is "reasonable ground" and "probable cause" to believe that Defendant committed the offenses of false imprisonment, grand theft auto and domestic battery for the following reasons:

First, the Court finds Trinette Gaskins Holloway's testimony recanting her allegation of domestic assault by the Defendant on January 31, 2008 not credible. Gaskin now claims that Defendant did not slap her in the face as she previously alleged. However, Gaskin's recanted testimony is insufficient by itself to defeat a finding of probable cause given all the circumstances set forth in the record. The circumstances set forth in the record include Gaskin's testimony: (1) admitting that she was arguing with the Defendant on the morning of January 31, 2008; (2) admitting that she left her apartment during the argument; (3) admitting that she asked Hobbs for his phone; (4) admitting that she told Hobbs she was calling the police; and (5) admitting that on the day of the incident she "talked to police . . . that [sic] husband slapped [her] face;" Hobbs credibly testified that Gaskins asked him

for her phone so that she could call the police. This testimony is consistent with the police report. Importantly, United States Probation Officer Guthrie testified that law enforcement took photographs of Gaskins' facial injury on the date the incident, and, that Gaskins told police the Defendant slapped her.

Holloway's recanted testimony that her face was red, because she had slept on an her earring (not because her husband hit her), and, that she only pretended to call the police are insufficient to defeat the totality of circumstances which support that a domestic dispute occurred between the Defendant and Gaskins on January 31, 2008, which involved Gaskins receiving a facial injury from an alleged slap from Defendant. The Court makes a practical common sense decision that there is probable cause to believe that Defendant committed the offense of domestic battery on January 31, 2008.

Second, the Court finds that under Florida law false imprisonment is a lesser included offense of kidnaping. State v. Sanborn, 533 So. 2d 1169, 1170 (Fla. 1988). Accordingly, Defendant's challenge to the instant Petition on the ground that it charges him with kidnaping and not false imprisonment is without merit.

Third, the Court finds that the Government presented evidence sufficient to establish probable cause that Defendant committed the offense of false imprisonment and grand theft auto. Hobbs credibly testified that he repeatedly told the Defendant that he could not take his vehicle and that his child was in the car. This testimony is consistent with the police report (Government's Exhibit #1) filed at the time of the alleged crime. At the preliminary hearing, Hobbs qualified this testimony by stating that "he is not sure" if the Defendant "heard" his warnings. The Court cannot reconcile Hobbs' uncertainty as to the Defendant's ability to hear his warnings with the words Hobbs used to express those warnings. Hobbs testimony is that he repeatedly warned the Defendant by saying "get

8

away from my truck - what are you doing" and "my baby girl is in there - you can't take that." Words like "get away from my truck" "what are you doing" "my baby girl is in there" and "you can't take that" are generally not expressed by a speaker in a modulated tone of voice without consideration if they could be heard. Additionally, Hobbs' speculation that Defendant might not be able to hear him is inconsistent with Hobbs' testimony that he was able to hear the Defendant and his girlfriend arguing. It is reasonable that if Hobbs could hear them - they could hear him. Additionally, the statement Hobbs provided to police at the crime scene clearly states that Hobbs claimed that he warned the Defendant and that Defendant responded to his warning. The crime scene report states:

> "Hobbs asked him 'get away from my truck - what are you doing' Holloway said 'I can't be dealin' with the police I gotta go' . . . Hobbs told him [Defendant] several times 'my baby girl is in there - you can't take that' and Holloway simply replied 'I gotta go.'

The Defendant did not testify as to what he heard or did not hear. The Court makes a practical, common-sense decision, given all the circumstances set forth, that there is probable cause to believe that Defendant opened the door of Hobbs' truck, started the ignition, and drove away with the truck having been warned by Hobbs "to get away from my truck" and that his "baby girl" was in the vehicle.

Alternatively, even if, Hobbs gave the Defendant permission, as he was driving off, to take the child and the vehicle for a few minutes, this permission is after the Defendant entered the vehicle, started the vehicle and drove off. In this scenario, there is probable cause to believe that Defendant took the vehicle and the child without permission from the instant that he entered the car to the time when Hobbs extended his permission.

Based on the record evidence before this Court, the Court finds there is probable cause to believe that on January 31, 2008 the Defendant committed the crime of false

imprisonment, and the offenses of domestic battery and grand theft auto, as charged in the Petition for Violation of Supervised Release.

## DETENTION ORDER

Rule 32.1(a)(6) of the Federal Rules of Criminal Procedure provides that the magistrate judge may release or detain a person charged with violating supervised release under the provisions of 18 U.S.C. § 3143(a). Rule 32.1(a)(6) places the burden on the defendant to establish that he will not flee or pose a danger to any other person or to the community. A defendant shall be detained pursuant to 18 U.S.C. 3143(a) unless the judge finds by clear and convincing evidence that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released.

In this case, the Court finds that the Defendant has not met his burden of proving that he will not flee or pose a danger to any person or to the community if released, under any condition or combination of conditions set forth in 18 U.S.C. § 3143(a). To the contrary, the Court finds that the Defendant's instant violations support a finding that the Defendant is a danger to the community and a flight risk. The offense underlying the instant Petition concerns Defendant's flight from police. The police report concerning the events of the morning of January 31, 2008 states that the Defendant spoke with a hostage negotiator and promised to return to the crime scene with the truck and child. Defendant did not return. His actions speak to his fundamental disregard for the rule of law. Accordingly, the Court finds that Defendant is a flight risk and danger to the community.

Under these circumstances, and given the dictates of 18 U.S.C. § 3143(a), the Court orders the Defendant, HARVEY MARTIN HOLLOWAY JR., detained until further order of the Court. Accordingly, it is hereby

ORDERED that the Defendant be remanded to the custody of the U.S. Marshal.

The Court also directs that the Defendant be afforded reasonable opportunity for private consultation with counsel; and the Court directs that, on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined deliver the Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

DONE and ORDERED in Chambers at West Palm Beach in the Southern District of Florida, this _3_ day of July, 2008.

ANN E. VITUNAC
UNITED STATES MAGISTRATE JUDGE

Copies to:
Honorable Donald M. Middlebrooks
AUSA Kimberly Abel
Kevin Anderson, Esq.
U.S. Marshal
U.S. Probation Office

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.07-80188-CR-Hurley/Vitunac (S)(S)

UNITED STATES OF AMERICA

      Plaintiff,

   VS.

ANGEL JULIO NAVARRO-LLITERAS (J),
REG. # 73056-004,

     Defendant.

FILED by _____ D.C.

JUL 0 3 2008

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

**NOTICE OF HEARING**

TYPE OF CASE:

          ( ) CIVIL       (XX) CRIMINAL

**(XX)** TAKE NOTICE that a proceeding in this case has been set for the place, date, and time set forth below:

PLACE:
**U.S. DISTRICT COURT**
**701 CLEMATIS STREET**
**WEST PALM BEACH, FLORIDA**

ROOM NO.:
**COURTROOM 2   4TH FLOOR**
DATE AND TIME:

**FRIDAY, JULY 11, 2008 @ 10:00AM**

TYPE OF PROCEEDING:

**ARRAIGNMENT ON SECOND SUPERSEDING INDICTMENT**

( ) TAKE NOTICE that the proceeding in this case has been **continued** as indicated below:

PLACE:          DATE/TIME PREVIOUSLY      CONTINUED TO, DATE
                SCHEDULED:            AND TIME:

ANN E. VITUNAC
U.S. MAGISTRATE JUDGE

DATE: JULY 03 , 2008

(BY) MAGISTRATE COURTROOM DEPUTY
Kenneth J. Zuniga

TO:  AUSA EMALYN WEBBER
     RICHARD DELLA FERA, ESQ.
     UNITED STATES MARSHAL
     UNITED STATES PROBATION & PRETRIAL SERVICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.08-80055-CR-Hurley/Vitunac

UNITED STATES OF AMERICA

        Plaintiff,

    VS.

GUILLERMO HERNANDEZ (J),
REG. # 73070-004,

        Defendant.

FILED by ___ D.C.

JUL 0 3 2008

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

                                    **NOTICE OF HEARING**

TYPE OF CASE:

            ( ) **CIVIL**          (XX) **CRIMINAL**

**(XX)** TAKE NOTICE that a proceeding in this case has been set for the place,
            date, and time set forth below:

| PLACE: | ROOM NO.: |
|---|---|
| **U.S. DISTRICT COURT** | **COURTROOM 2   4TH FLOOR** |
| **701 CLEMATIS STREET** | DATE AND TIME: |
| **WEST PALM BEACH, FLORIDA** | **THURSDAY, JULY 10,2008 @11:30 AM** |

TYPE OF PROCEEDING:

**CHANGE OF PLEA HEARING**

( ) TAKE NOTICE that the proceeding in this case has been **continued** as indicated below:

| PLACE: | DATE/TIME PREVIOUSLY SCHEDULED: | CONTINUED TO, DATE AND TIME: |
|---|---|---|

                                ANN E. VITUNAC
                        U.S. MAGISTRATE JUDGE

DATE: July 03, 2008

                        (BY) MAGISTRATE COURTROOM DEPUTY
                            Kenneth J. Zuniga

TO:  AUSA KERRY BARON
     JAY ALLEN WHITE, ESQ.
     UNITED STATES MARSHAL
     UNITED STATES PROBATION & PRETRIAL SERVICE